UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
GREENEVILLE

ALAN T. KYTE )
 )
V. ) NO. 2:10-CV-70
 )
MICHAEL J. ASTRUE, )
Commissioner of Social Security )

REPORT AND RECOMMENDATION

The matter is before the United States Magistrate Judge, under the standing orders of the Court and 28 U.S.C. § 636 for a report and recommendation regarding this judicial appeal of the administrative denial of plaintiff's application for disability insurance benefits under the Social Security Act. Both the plaintiff and the defendant Commissioner have filed dispositive Motions [Docs. 10 and 12].

The sole function of this Court in making this review is to determine whether the findings of the Secretary are supported by substantial evidence in the record. *McCormick v. Secretary of Health & Human Services*, 861 F.2d 998, 1001 (6th Cir. 1988). "Substantial evidence" is defined as evidence that a reasonable mind might accept as adequate to support the challenged conclusion. *Richardson v. Perales*, 402 U.S. 389 (1971). It must be enough to justify, if the trial were to a jury, a refusal to direct a verdict when the conclusion sought to be drawn is one of fact for the jury. *Consolo v. Federal Maritime Comm.*, 383 U.S. 607 (1966). The Court may not try the case *de novo* nor resolve conflicts in the evidence, nor decide questions of credibility. *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). Even if the reviewing court were to resolve the factual issues differently, the Secretary's decision must stand if supported by substantial evidence. *Listenbee v. Secretary of Health and Human*

*Services*, 846 F.2d 345, 349 (6th Cir. 1988). Yet, even if supported by substantial evidence, "a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Bowen v. Comm'r of Soc. Sec.,* 478 F.3d 742, 746 (6th Cir. 2007).

Plaintiff was 39 years of age at the time of his hearing before the Administrative Law Judge ["ALJ"]. He had past relevant work experience as a welder, which was heavy and skilled; as a carpenter which was heavy and skilled; as a prison guard which was medium and skilled; and as a factory worker which was medium and skilled. He had a high school education with a certificate in welding. He alleged disability due to anxiety, panic attacks, a back injury, brain tumor, post-traumatic stress disorder, left ankle fracture, GERD, and male erectile disfunction. [Tr. 107]. His disability onset date was alleged to be August 15, 2001. His insured status for disability insurance benefits expired on December 31, 2006. In order to be eligible for such benefits, the plaintiff must prove that he was disabled on or prior to that date.

The plaintiff's medical history is described in the Commissioner's brief as follows:

> The record reveals Plaintiff had malignant neoplasm of the pituitary gland (Tr. 166). Plaintiff underwent surgery for that condition on March 12, 2002, and postoperatively his vision improved significantly, and through to December 2007, had not worsened (Tr. 166). Plaintiff complained of headaches since the surgery (Tr. 166-67). A December 12, 2007 examination revealed Plaintiff had been prescribed bifocals with no reported visual deficits (Tr. 167).
> January 2004 MRI of the pituitary gland showed changes consistent with a history of adenoma (benign tumor) and surgical intervention, changes that were of fluid nature and no other changes (Tr. 427-28).
> Plaintiff underwent a CT scan of the head on February 13, 2006 (Tr. 335). There was no evidence of hemorrhage or abnormal areas of enhancement (Tr. 336). There was a low density lesion in the region of the sella and sphenoid sinus (Tr. 336).
> A May 18, 2006 psychiatric exam revealed Plaintiff had normal affect, mood

and judgment; no obsessive behavior; appropriate behavior; and no hallucinations or delusions (Tr. 309). An eye exam showed normal reaction of the pupils to light and accommodations, normal
gross field, and no abnormalities of the fundus, lids, eyebrows and conjunctivae (Tr. 419).

In July 2006, a physician noted Plaintiff wore glasses that allowed for normal vision (Tr. 402), and that there was no history of vision loss (Tr. 406).

Dr. N. Robinson, a state agency physician, reviewed Plaintiff's medical record, and he assessed Plaintiff's ability to work through December 31, 2006, his date last insured (Tr. 342- 49). Plaintiff could lift/carry 50 pounds frequently and 25 pounds occasionally, stand walk 6 hours a day, and sit 6 hours a day (Tr. 343).

In September 2007, Plaintiff reported he was doing alright and he denied depression (Tr. 322). Medications helped and he denied medication side effects (Tr. 322).

An October 2007 record review indicated Plaintiff had depression and anxiety that were stable and that responded well to medications (Tr. 400).

Dr. C. Stanley performed a psychological examination of Plaintiff on December 12, 2008, two years after Plaintiff's date last insured (Tr. 373). Plaintiff was cooperative, but disorganized and sometimes vaguely inappropriate (Tr. 373). He was oriented, his immediate memory was intact, and he had difficulty maintaining a logical and coherent train of thought (Tr. 375). Plaintiff had hallucinations and ideas of reference, but he denied suicidal or homicidal ideations (Tr. 375-76). His attention span was poor (Tr. 376). He was not depressed, but his anxiety was severe (Tr. 376). Plaintiff drove and tried to help his wife around the house (Tr. 373, 376). Dr. Stanley opined Plaintiff had difficulty with simple information or directions, he had no ability to maintain persistence and concentration on tasks for a full work day, and his social relationships were impaired (Tr. 378).

On January 9, 2008, Dr. Stanley completed a form assessing Plaintiff's mental abilities (Tr. 381-83). Plaintiff was markedly limited in an ability to understand and remember simple instructions, moderately limited in an ability to make judgments on simple work-related decisions, and moderately limited in an ability to understand and remember complex instructions (Tr. 381). Plaintiff was markedly limited in an ability to interact with the public, supervisors and coworkers, and extremely limited in an ability to respond appropriately to usual work situations (Tr. 382).

[Doc. 13. pgs. 2-4].

The ALJ called a "medical expert," Dr. Thomas E. Schacht, a clinical psychologist, to testify at the administrative hearing. Dr. Schacht reviewed the plaintiff's entire psychological history in preparation for his testimony. Dr. Schacht's testimony is

summarized in the Commissioner's brief as follows:

> Dr. T. Schacht, a clinical psychologist, testified at the administrative hearing as an ME (Tr. 36, 87). After reviewing all of Plaintiff's medical record and being present at the hearing, Dr. Schacht testified that Plaintiff was successfully treated at the VA for dysthymia and anxiety (Tr. 37). September 2007 notes indicated Plaintiff denied feeling depressed and his mood was good (Tr. 37). Plaintiff also denied a depressed mood in September 2008 (Tr. 39). Dr. Schacht testified that from August 15, 2001, Plaintiff's alleged onset date, through December 31, 2006, his date last insured, Plaintiff was treated for dysthymia and anxiety, and the record indicated he had a good response to treatment (Tr. 41-42). Dr. Schacht concluded that during this relevant period of time, the record indicated Plaintiff had mild limitations (Tr. 42).

[Doc. 13, pgs. 4-5].

At the hearing, the ALJ also called Donna Bardsley, a Vocational Expert, to testify. After she evaluated the vocational and skill requirements of the plaintiff's past jobs, the ALJ asked her to assume a person of the plaintiff's age with a high school education and plaintiff's work history. She was asked to assume the person "is restircted to the demands of light work activity, which is work activity that requires lifting of 20 pounds occasionally and 10 pounds frequently. If you would further assume the claimant could do simple, unskilled jobs that would not require...fine visual discrimination." When asked if there were jobs a person could perform who had these restrictions, Ms. Bardsley stated "[t]here would be some hand packagers. In the region 500, and nationwide 700,000. Sorters, in the region 400, and nationwide 450,000. Assemblers. In the region 375, and nationwide 575,000. Inspectors. In the region 200, and nationwide 200,000. Cashiers. In the region 800, and nationwide 2,500,000." [Tr. 43].

In his hearing decision, the ALJ found that the plaintiff had severe impairments of a pituitary tumor, blurred and tunnel vision, headaches, ankle pain, dysthymia and anxiety. [Tr. 12]. With those impairments, the ALJ found that the plaintiff had the residual functional

4

capacity to perform "simple, unskilled light work that did not require fine visual discrimination." [Tr. 13]. Based upon the testimony of Ms. Bardsley, he found that there were 2,275 jobs in the regional economy and over four million in the national economy which the plaintiff could perform. Accordingly, during the applicable period during which the plaintiff was insured, on and before December 31, 2006, he found that the plaintiff was not disabled. [Tr. 20]

Plaintiff asserts that the ALJ's decision was not supported by substantial evidence. He states that the plaintiff had severe problems from his pituitary disease and the resultant emotional problems, vision problems, and headaches which stemmed from that condition. Further, he argues that Dr. Stanley's psychological assessment was not properly considered. Finally, he complains that the ALJ did not properly analyze or give enough weight to the plaintiff's subjective complaints about the effects of his conditions on his ability to function.

The plaintiff's greatest hurdle is to show that he was incapable of substantial gainful activity prior to December 31, 2006, when he ceased to be eligible for disability insurance benefits. One *year* after his eligibility expired, treating doctors at Vanderbilt noted that plaintiff's "vision improved significantly following the (2002) surgery, and has not worsened over the past 5 years." [Tr. 166]. While he still had some visual problems at that time, he had been prescribed bifocals with no reported visual field deficits. [Tr. 167]. How good was his vision "over the past five years"? A VA Medical Center treatment note from July, 2006, stated "glasses allow for normal vision." [Tr. 402]. On September 13, 2007, a treatment note from the VA stated that the plaintiff had "occasional headache controlled by ibuprofen/motrin/good powder at home." [Tr. 326].

5

These reports from treating sources along with the State Agency assessment provide substantial evidence to support the physical aspect of the plaintiff's residual functional capacity as found by the ALJ.

In May 2006, a psychiatric exam at the VA Medical Center revealed that plaintiff had a normal affect, a normal mood, exhibited normal judgment, had no obsessive behavior, exhibited appropriate behavior, had no hallucinations or delusions, had normal comprehension of commands and exhibited average intelligence. [Tr. 309]. Another mental evaluation from the VA in September, 2007, about ***9 months after*** the expiration of his insured status, noted that "patient reports he is doing alright-denies feeling depressed-mood has been good-denied crying spells or feeling hopeless and helpless. At times feels anxious, but feels his medications help and he denied side effects from them." [Tr. 322]. Another treatment note from this same source at this same time notes that plaintiff stated that he had no "serious mental health problems." [Tr. 324].

Contrary to the plaintiff's assertions, the ALJ spent a significant portion of his hearing decision detailing the reasoning utilized in reaching his opinion regarding the plaintiff's mental impairments, their severity, and their impact on plaintiff during the period he was insured. He gave adequate reasons for failing to give weight to Dr. Stanley's assessment and great weight to that of Dr. Schacht. Dr. Stanley examined the plaintiff two years after the expiration of his insured status [Tr. 19]. Although the Court is somewhat leery of "medical experts" who have not examined a claimant and pontificate at the administrative hearing offering opinions contrary to all the treating and examining sources, that was not the case here with the testimony of Dr. Schacht. The VA records certainly corroborate his opinion,

adopted by the ALJ, that the plaintiff had no more than mild emotional symptoms prior to the expiration of his insured status. If the plaintiff was mentally disabled in December of 2008, when examined by Dr. Stanley, then he should file a new application for supplemental security income. The fact is that there was substantial evidence that he was not disabled by these impairments during the period he was insured.

The ALJ took into account all of the plaintiff's impairments and their effect on the plaintiff's RFC, as he found them as the trier of fact, and incorporated them into his hypothetical question to the vocational expert. He did at least an adequate job of explaining his rationale for not giving full credit to the plaintiff's subjective complaints. [Tr. 18].

There was substantial evidence to support the ALJ's findings and his question posed to the VE. He adjudicated the case and explained his findings in accordance with applicable law. It is therefore respectfully recommended that the plaintiff's Motion for Judgment on the Pleadings [Doc. 10] be DENIED, and that the defendant Commissioner's Motion for Summary Judgment [Doc. 12] be GRANTED.[1]

                                        Respectfully submitted:

                                          s/ Dennis H. Inman
                                          United States Magistrate Judge

---

[1] Any objections to this report and recommendation must be filed within fourteen (14) days of its service or further appeal will be waived. 28 U.S.C. 636(b)(1).